CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE VA. - FILED

APR 1 5 2008

JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| NERY A. SALINAS, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:08cv00268 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| JEFFREY DILLMAN, | ) | By: Hon. Glen E. Conrad |
|     Defendant. | ) | United States District Judge |

Proceeding pro se, plaintiff Nery A. Salinas, Virginia inmate number 373584, brings this action under the Civil Rights Act, 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. Plaintiff, who is housed at the Green Rock Correctional Center ("Green Rock") in Chatham, Virginia, alleges that his security level has been determined incorrectly. He further alleges that his constitutional rights have been violated by racial profiling and "institutional/U.S. Mail Issues" at Green Rock. Plaintiff seeks $3,000,000.00 in damages and the "violation of [his] civil rights and raised issues resolved." Upon review of the complaint and the documents plaintiff has submitted in support thereof, the court concludes that plaintiff has not stated a claim upon which relief can be granted and, therefore, will dismiss the complaint pursuant to 28 U.S.C. § 1915A(b)(1).[1]

## I. STANDARD OF REVIEW

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the deprivation of that

---

[1] Section 1915A(b)(1) provides that the court shall dismiss a complaint as soon as practicable if the court determines that it is frivolous, malicious, or fails to state a claim upon which relief may be granted. The court adds that plaintiff's grievance documentation suggests that he has not exhausted all available administrative remedies prior to filing the instant lawsuit, as required pursuant to 42 U.S.C. 1997e(a). Nonetheless, it is clear that plaintiff has failed to state a claim upon which relief may be granted, and the court will dispose of the complaint accordingly.

right was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). A complaint fails to state a claim upon which relief can be granted when no relief is available under any set of facts that could be proved consistent with the allegations of the complaint. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002); see also Bell Atlantic Corp. v. Twombly, 550 U.S. ___, 127 S. Ct. 1955, 1965 (2007) (while the complaint need not provide detailed factual allegations, the basis for relief in the complaint must state "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"; the Court specifically explained, id., slip op. at 1973-74, that the Twombly analysis does not run counter to Swierkiewicz or impose a heightened pleading standard; the Court further noted, id. at 1973, n. 14, that "[o]n certain subjects understood to raise a high risk of abusive litigation, a plaintiff must state factual allegations with greater particularity than Rule 8 requires"); Teachers' Retirement System of La. v. Hunter, 477 F.3d 162, 170 (4th Cir. 2007) (citing Swierkiewicz, 534 U.S. at 514, and stating that "a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations"). When dismissing a complaint for failure to state a claim upon which relief may be granted, courts may consider exhibits attached to the complaint, and where a conflict exists between "the bare allegations of the complaint and any attached exhibit, the exhibit prevails." United States ex rel. Constructors, Inc. v. Gulf Ins. Co., 313 F. Supp. 2d 593, 596 (E.D. Va. 2004) (citing Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991)); see also Anheuser-Busch v. Schmoke, 63 F.3d 1305, 1312 (4th Cir. 1995).

2

## II. SECURITY LEVEL

Plaintiff states that his security level is incorrect, and thus violates his constitutional rights. Plaintiff contends that his security level was improperly "enhanced" because his Classification Summary Report ("CSR") incorrectly indicated that he was subject to a "Mandatory Restrictor R4 Detainer." Plaintiff has submitted his CSR, dated August 13, 2007, which indicates that inmates classified as "R4," i.e., subject to "Felony or Immigration Detainers," are prohibited from a Level 1 classification. Level 1 is the very lowest security classification, available to inmates with up to 9 points in their total score.[2] Documentation that plaintiff submitted with his complaint indicates that the Virginia Department of Corrections ("VDOC"), in a letter to plaintiff dated August 28, 2007, stated that the VDOC had "notified the Bureau of Immigration and Naturalization Services of your place of birth and sentencing status," but that "[a] detainer has not officially been filed with the Department of Corrections." In plaintiff's view, because the detainer has not been officially filed, his inmate classification was impermissibly enhanced. He maintains that he has informed the VDOC that the detainer has not been officially filed, but that his security level has not been diminished.[3]

Plaintiff's claim must fail. A prisoner does not have a constitutional right to be placed in a specific security classification. See Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976).[4] Custodial

---

[2] Plaintiff's total score is a 2. There are 4 levels of increasing security classification above Level 1. Plaintiff's R4 classification does not raise his security classification; it only prohibits him from Level 1, the most lenient security classification.

[3] The court stresses that the R4 classification is apparently not absolutely restrictive: plaintiff's documentation indicates that he is permitted to escort disabled inmates as a "wheelchair pusher" and that he serves as a translator.

[4] Furthermore, the classification of inmates based upon their situs of incarceration does not employ a suspect class or burden a fundamental right, and thus it "is accorded a strong presumption of validity." Heller v. (continued...)

classifications do not create a major disruption in a prisoner's environment.[5] Sandin v. Connor, 515 U.S. 472, 486-87 (1995). In Sandin, the Supreme Court recognized that states may create liberty interests protected by the Due Process Clause where the freedom from restraint imposed "atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life." Id. at 484. In order to show the deprivation of a liberty interest regarding custody classifications, an inmate must show either that the conditions exceed the sentence imposed in such an unexpected manner as to give

---

[4](...continued)
Doe, 509 U.S. 312, 319 (1993). "The only proper judicial inquiry is whether the [classification] serves a legitimate state [penological] interest and whether the challenged classification is rationally related to it." Moss v. Clark, 886 F.2d 686, 690 (4th Cir. 1989) (citing McGinnis v. Royster, 410 U.S. 263, 270 (1973)). Even where similarly situated persons are treated differently, a state classification "that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for [it]." FCC v. Beach Communications, Inc., 508 U.S. 307, 313 (1993); see McGowan v. Maryland, 366 U.S. 420, 426 (1961) (noting that such classifications "will not be set aside if any state of facts reasonably may be conceived to justify it"). Moreover, the burden rests on the one challenging the [classification] to disprove the existence of every conceivable basis which might support it." Mitchell v. Comm'r of the Soc. Sec. Admin., 182 F.3d 272, 274 (4th Cir. 1999) (internal quotation marks omitted). The reasons need not actually motivate the state's conduct or action; they need only reflect a set of facts reasonably conceived to justify the action. See id. at 274-75. Nor must the state "articulate its reasoning at the moment a particular decision is made. Rather, the burden is upon the challenging party to negative any reasonably conceivable state of facts that could provide a rational basis for the classification." Board of Trustees of the Univ. of Alabama v. Garrett, 531 U.S. 356, 367 (2001) (internal quotation marks omitted).

[5] A mere chance or probability that a single factor will affect a future parole decision is too attenuated to invoke the Due Process Clause. Sandin v. Connor, 515 U.S. 472, 486-87 (1995). Insofar as plaintiff claims that the R4 classification is incorrect, an agency's decisions are not to be second-guessed by federal courts unless they are arbitrary, capricious, or manifestly contrary to statute. See Chevron v. Natural Res. Def. Council, 467 U.S. 837, 844 (1984). While the United States Court of Appeals for the Fourth Circuit has held that "in certain limited circumstances" an inmate may have a right "to have prejudicial erroneous information expunged from [his] prison files," the inmate must allege that particular information in his files is false, and that such information was relied upon to a constitutionally significant degree. Paine v. Baker, 595 F.2d 197, 201-203 (4th Cir.1979). Additionally, an inmate seeking to bring such a claim must first demonstrate that he has requested relief from the relevant authority and that relief has been denied. Id. Plaintiff does not dispute the accuracy of the immigration information – rather, he only disputes that the detainer has yet been issued – and he fails to show that, even were the immigration information false, it has been relied upon to a constitutionally significant degree, such as in a parole determination. And, given the recent dates of the grievance documents plaintiff presents in support of his claim, it is clear that plaintiff has not exhausted all available forms of relief. Since none of these requirements has been met, plaintiff fails to state a claim under Paine v. Baker.

4

rise to protection by the Due Process Clause of its own force, or that the confinement creates an atypical or significant hardship and that the state has granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from that confinement or restraint. Id. at 483-84.

Here, plaintiff's security classification clearly does not exceed plaintiff's sentence in such an extreme way as to give rise to the protection of the Due Process Clause by its own force.[6] See Beverati v. Smith, 120 F.3d 500, 503 (4th Cir. 1997) (holding that administrative segregation for six months with vermin; human waste; flooded toilet; unbearable heat; cold food; dirty clothing, linens, and bedding; longer periods in cell; no outside recreation; no educational or religious services; and less food was not so atypical as to impose significant hardship). Nor does an increase in security classification constitute an "atypical and significant" hardship in relation to the ordinary incidents of prison life, because a prisoner has no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification. See Moody, 429 U.S. at 88 n. 9, (rejecting a prisoner's argument that a pending warrant and detainer adversely affected his prison classification and qualification for institutional programs because not "every state action carrying adverse

---

[6] See n.3, supra. Plaintiff is advised that an inmates' liberty "interests will be generally limited to the freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484. Changes "in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir.1991). Furthermore, such changes are necessarily functions of prison management that must be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively. Id. Courts have held that placement and long-term detention in segregated confinement under Virginia's prison regulations does not give rise to any constitutionally protected liberty interest under Sandin. See, e.g., DeBlasio v. Johnson, 128 F. Supp.2d 315, 328-29 (E.D. Va. 2000), aff'd by Madison v. Johnson, 12 Fed. App'x. 149 (4th Cir. 2001) (unpublished). Thus, it is clear that plaintiff has no due process claim concerning the minimal restrictions on his liberty imposed by the R4 classification.

5

Case 7:08-cv-00268-GEC-mfu Document 5 Filed 04/15/08 Page 5 of 12 Pageid#: 79

consequences for prison inmates automatically activates a due process right"); see also Meachum v. Fano, 427 U.S. 215, 225 (1976) (holding that "[n]either, in our view, does the Due Process Clause in and of itself protect a duly convicted prisoner against transfer from one institution to another within the state prison system," and noting that the fact "[t]hat life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules"); but see Wilkinson v. Austin, 545 U.S. 209 (2005) (holding that transfer to a "supermax" prison "imposes an atypical and significant hardship under any plausible baseline," id. at 223, because "[conditions] at [the prison] are more restrictive than any other form of incarceration in Ohio," id. at 214).[7, 8]

Accordingly, the court concludes that plaintiff's security classification claims must be dismissed, pursuant to § 1915A, for failure to state a claim upon which relief may be granted.

---

[7] Plaintiff does not assert that state prison guidelines create a liberty interest triggering due process rights in the instant circumstances. At any rate, the Supreme Court has made it clear "that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" Wilkinson, 545 U.S. at 223 (quoting Sandin, 515 U.S. at 484). Even prior to the clarifications of Sandin and Wilkinson, however, it was clear that the Constitution does not vest in an inmate a liberty interest in retaining or receiving a certain custody or classification status. Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir.1994) (as long as the challenged conditions or degree of confinement is within the sentence imposed and is not otherwise violative of the Constitution, the security and custody classification of state prison inmates is a matter for state prison-official discretion whose exercise is not subject to federal procedural due process constraints).

[8] To the extent plaintiff's complaint could be construed as presenting a claim that his security classification violates the Equal Protection Clause, the claim must fail. To establish an equal protection violation, a plaintiff must first demonstrate that he or she has been "treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination"; once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny. See Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir.2001). Plaintiff's conclusory allegations are insufficient to state a claim of discriminatory intent. Plaintiff does not allege that he was treated differently from any other similarly situated prisoner nor does he show, or even allege, that any purported "unequal" treatment was the result of intentional or purposeful discrimination. See Chapman v. Reynolds, 378 F. Supp. 1137, 1140 (W.D. Va.1974).

## III. "RACIAL PROFILING"

Plaintiff states that he "and all individuals with Hispanic names" at Green Rock have been subjected to "racial profiling." He states no basis for this allegation other than the assertion that his R4 security classification demonstrates racial profiling.[9] Allegations of racial discrimination are actionable under § 1983, Henry v. Van Cleve, 469 F.2d 687 (5th Cir. 1972), but merely conclusory allegations of discrimination are insufficient to state a claim, Chapman v. Reynolds, 378 F. Supp. 1137 (W.D. Va. 1974). Plaintiff has not suggested any way that his constitutional rights have been violated owing to racial animus[10]; accordingly, the court will dismiss this claim, pursuant to 28 U.S.C. § 1915A, for failure to state a claim upon which relief may be granted.

---

[9] The court repeats that plaintiff's R4 classification passes constitutional muster because it does not impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.

[10] Plaintiff does not even allege that Green Rock or VDOC officials have made any comments or gestures that could reasonably be construed as suggesting racial animus. See Thomas v. Kincaid, Civil Action No. 03-941-AM, 2004 WL 3321472 (E.D. Va. June 30, 2004) (finding that Caucasian Trooper's statement, "Come here you piece of shit," to African-American defendant was insufficient to support a claim of racial discrimination); Felton v. Chupik, Civil Action No. 00-CV-1889, 2002 WL 32344335 (E.D. Va. Aug. 21, 2002) (finding that the comment, "I think you broke that nigger's neck," was insufficient to support a claim of racial discrimination against a police officer); Collins v. Cundy, 603 F.2d 825 (10th Cir.1979) (holding that the Sheriff's actions in laughing at and threatening to hang the plaintiff were not sufficient to show the deprivation of a constitutional right). The constitution does not "protect against all intrusions on one's peace of mind." Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir.1991). Verbal harassment or idle threats to an inmate, even to an extent that causes an inmate fear or emotional anxiety, does not constitute an invasion of any identified liberty interest. Emmons v. McLaughlin, 874 F.2d 351, 354 (6th Cir.1989) (verbal threats causing fear for plaintiff's life not an infringement of a constitutional right); Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985) (calling an inmate an obscene name did not violate constitutional rights); Lamar v. Steele, 698 F.2d 1286 (5th Cir. 1983) ("Threats alone are not enough. A section 1983 claim only accrues when the threats or threatening conduct result in a constitutional deprivation."); Ellingburg v. Lucas, 518 F.2d 1196, 1197 (8th Cir. 1975) (defamation does not implicate any constitutionally protected right); Keyes v. City of Albany, 594 F. Supp. 1147 (N.D. N.Y. 1984) ("[T]he use of vile and abusive language [including racial epithets], no matter how abhorrent or reprehensible, cannot form the basis for a 1983 claim."). The law is clear that mere "threatening language and gestures of [a] penal officer do not, even if true, constitute constitutional violations." Fisher v. Woodson, 373 F. Supp. 970, 973 (E.D.Va.1973). Accordingly, it is clear that plaintiff must present more than a bald allegation of racial discrimination.

7

## IV. "INSTITUTIONAL/U.S. MAIL ISSUES"

Plaintiff alleges that his constitutional rights have been violated by "institutional" and "U.S. mail issues." Plaintiff does not elaborate on these claims; instead, he submits 55 pages of grievance documentation. Although district courts have a duty to construe pro se pleadings liberally, a pro se plaintiff must nevertheless allege facts that state a cause of action. Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985) (adding that the duty to construe pro se complaints liberally "does not require [district] courts to conjure up questions never squarely presented to them," and that "[d]istrict judges are not mind readers"). The court is not obliged to ferret through the complaint, searching for viable claims. See Holsey v. Collins, 90 F.R.D. 122 (D. Md. 1981) (although pro se complaint contained potentially viable claims, court properly dismissed without prejudice under Fed. R. Civ. P. 8 since voluminous, repetitive, and conclusory complaint is not a "short and plain statement" of facts and legal claims; court specifically observed that dismissal under Rule 8 was proper because such a complaint "places an unjustifiable burden on defendants to determine the nature of the claim against them and to speculate on what their defenses might be," and "imposes a similar burden on the court to sort out the facts now hidden in a mass of charges, arguments, generalizations and rumors"); see also Spencer v. Hedges, 838 F.2d 1210 (Table) (4th Cir. 1988). In the context of Fed. R. Civ. P. 8, it is clear that plaintiffs must provide enough detail to illuminate the nature of the claim and allow defendants to respond. See Erickson v. Pardus, 551 U.S. ___, slip op. at 5 (2007); Twombly, 127 S. Ct. at 1973, n. 14 ("[o]n certain subjects understood to raise a high risk of abusive litigation, a plaintiff must state factual allegations with greater particularity than Rule

8

8 requires").

Nonetheless, upon review of plaintiff's documentation, the court can discern two complaints: plaintiff is dissatisfied in some unspecified way with Green Rock's mail service, and he is dissatisfied with the Green Rock administration's insistence that he comply with established grievance procedures. For the reasons that follow, plaintiff's claims must fail.

### A. Mail

To state a claim based on delay or non-delivery of legal mail, an inmate must allege that he suffered actual adverse consequences as a result of the delay or that the non-delivery deprived him of meaningful access to the courts. White v. White, 886 F.2d 721, 724 (4th Cir. 1989). Plaintiff's complaint does not allege that any delays or non-delivery of mail have deprived him of meaningful access to the courts.

To establish that his First Amendment or Sixth Amendment rights have been violated by the opening of incoming legal mail, an inmate must demonstrate that there was some actual harm or prejudice to his ability to communicate with the court or counsel. See Lewis v. Casey, 518 U.S. 343, 351 (1996) (finding that when an inmate has had access to court, but alleges that officials deprived him of some item necessary for meaningful pursuit of his litigation, such as his already prepared legal materials, the inmate must allege facts showing actual injury or specific harm to his litigation efforts resulting from denial of the item). Plaintiff does not suggest that Green Rock's mail handling has hampered his ability to communicate with counsel or the courts concerning pending litigation, including criminal proceedings. Therefore, plaintiff's allegations do not raise a claim of a deprivation of plaintiff's Sixth Amendment right to counsel.

Additionally, to the extent plaintiff's complaint could be construed as alleging that opening his mail in his absence violates his First Amendment rights, it fails. A prison policy that impinges on an inmate's constitutional right is valid "if it is reasonably related to legitimate penological interests." Altizer v. Deeds, 191 F.3d 540, 547 (1999), citing Turner v. Safley, 482 U.S. 78, 89 (1987). The Fourth Circuit has expressly found that a prison has a legitimate security interest in opening and examining outgoing mail. Altizer, 191 F.3d at 549 (1999). The court can easily conceive of legitimate penological interests in ensuring that no contraband or harmful substance comes into the prison through the mail, thus the mere opening of mail, legal or otherwise, does not raise a claim of constitutional magnitude. Sterling-Earl v. Gray, 2006 WL 1318367 at *6-7 (W.D. Va. May 15, 2006). Furthermore, even assuming that plaintiff has had his legal mail opened outside of his presence, he fails to state a claim for relief. Plaintiff does not allege that any mail that was opened was marked as confidential legal mail; accordingly, he was not entitled to be present while it was opened and inspected. See United States v. Stotts, 925 F.2d 83, 88-90 (4th Cir. 1991). Moreover, he has not alleged that the opening of any of his mail has led to any actual harm or interfered with his ability to communicate with counsel or the courts. Lewis, 518 U.S. at 351; see also White, 886 F.2d at 724 (to state a claim based on delay or non-delivery of legal mail, an inmate must allege that he suffered actual adverse consequences as a result of the delay or that the non-delivery deprived him of meaningful access to the courts). Finally, state officials cannot be held liable under § 1983 for negligent or intentional destruction, loss, or interference with mail or other personal property. Pink v. Lester, 52 F.3d 73 (4th Cir. 1995)(citing Daniels v. Williams, 474 U.S.

10

327 (1986)), Bowler v. Young, 2003 WL 24253707 *1 (W.D. Va. June 25, 2003), aff'd, 78 Fed. Appx. 281 (4th Cir. 2003).

For these reasons, this claim will be dismissed, pursuant to 28 U.S.C. § 1915A, for failure to state a claim upon which relief may be granted.

## B. GRIEVANCES

Inmates do not have a constitutionally protected right to a grievance procedure. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991). Accordingly, a prison official's failure to comply with the state's grievance procedure is not actionable under § 1983. Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); Azeez v. De Robertis, 568 F. Supp. 8, 9-11 (N.D.Ill.1982). Under these principles, plaintiff has no actionable claim regarding defendants' responses to his grievances or their administration of the grievance process.[11] Accordingly, this claim will be dismissed, pursuant to 28 U.S.C. § 1915A, for failure to state a claim upon which relief may be granted.

---

[11] Plaintiff's grievance documentation indicates that he has had a number of grievances rejected as containing multiple issues, for not including supporting documentation, for not having first resorted to the informal complaint system, and the like. Plaintiff is advised that he must comply with the VDOC's exhaustion requirements, and that prison officials' insistence that he comply does not violate his constitutional rights. It is well-settled that Virginia inmates are required to exhaust administrative remedies in accordance with the grievance procedures established by the VDOC as a prerequisite to filing a civil suit in federal court. See Cooper v. Schilling, et al., Civil Action No. 7:06-cv-00296 (W.D. Va. November 20, 2006) (Turk, S.J.), slip op. at 3-5, 2006 WL 3359592 at *2 (Virginia inmates are required to exhaust claims in accordance with the grievance procedures established by the VDOC); Davis v. Stanford, 382 F. Supp.2d 814, 818 (E.D. Va. 2004) (same); Lawrence v. Va. Dep't of Corr., 308 F. Supp.2d 709, 718 (E.D. Va. 2004) (where prison policies require inmates to file grievances within a specified time period following a complained-of event, but plaintiff is unable to do so because the period has expired, plaintiff is still required to "appeal[ ][the] procedural denials to the point of exhaustion of . . . administrative remedies," id. at n. 14, before filing § 1983 action).

## V. CONCLUSION

For the foregoing reasons, plaintiff's complaint will be dismissed pursuant to 28 U.S.C. § 1915A for failure to state a claim upon which relief may be granted. The Clerk is directed to send certified copies of this memorandum opinion and accompanying order to plaintiff.[12, 13]

ENTER: This 15th day of April, 2008.

_____
United States District Judge

---

[12] To the extent the complaint could be construed to state an actionable claim against the defendants under state law or VDOC regulations, the court declines to exercise supplemental jurisdiction over such claims, pursuant to 28 U.S.C. § 1367(c).

[13] The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).